Jay McCUNE, Alden Carlson, Robert Knee, Ralph L. Shafer, Steven Eldon Jones, Glen Kimble, Jonathan R. Byrd, Paula Shanklin, Gavin Chapin, and Phillip Callicrate, et al., Plaintiffs,

v.

OREGON SENIOR SERVICES DIVISION and its administrators, Richard Ladd and Dexter Henderson acting in their individual and official capacities; Oregon Adult & Family Services Division and its administrator, Keith Putman; and Oregon Department of Human Resources and its administrator, Leo Hegstrom, Defendants.

Civ. No. 83–6332–E.

United States District Court,
D. Oregon.

Sept. 9, 1986.

Michael L. Williams, McClaskey, Greig, Troutwine & Stoker, Portland, Or., for plaintiffs.

Dave Frohnmayer, Atty. Gen., Luther L. Jensen, Asst. Atty. Gen., Dept. of Justice, Salem, Or., for defendants.

## OPINION

PANNER, Chief Judge:

Plaintiffs and defendants moved for summary judgment on a number of issues. The motions were denied. Plaintiffs then asked the court to resolve six issues before trial, contending the issues were legal ones that could be decided as a matter of law. I treated these motions as motions to reconsider denial of the summary judgment motions, and granted and denied both motions in part. Plaintiffs then moved to reconsider, attaching additional affidavits and videotape evidence. The motion is denied.

This opinion supplements my earlier oral decision, and resolves the motion to reconsider. It also resolves one issue remaining from the summary judgment motion, which was not in the six issues listed by plaintiffs. Other issues from the summary judgment motion have been resolved by stipulated order.

## INTRODUCTION

Two claims remain in this action. In both, plaintiffs assert that they are covered by the Fair Labor Standards Act (FLSA) minimum wage provision, 29 U.S.C. § 201 *et seq.* Plaintiffs are live-in attendants for disabled and infirm persons. The clients pay for their care with federal and state assistance disbursed by the State of Oregon's in-home service program. Defendants are the state agencies involved in the program, the Oregon Department of Human Resources (DHR), DHR's Senior Services Division (SSD), DHR's Adult and Family Services Division (AFSD), and their administrators. Defendants concede that the claims against the state are not barred by the eleventh amendment.

Plaintiffs' first claim is that they are entitled to the minimum wage. Defendants respond that the FLSA's exclusion of coverage for companionship services applies, precluding a minimum wage claim. Plaintiffs' second claim is that they should be paid for all hours worked. Defendants respond that plaintiffs should be paid only for officially authorized hours. In their prayer for relief, plaintiffs seek back pay damages, and injunctive and declaratory relief. Defendants respond that injunctive and declaratory relief are not available.

## STANDARDS

Federal Rule of Civil Procedure 56(c) allows the court to grant summary judgment if it finds that: (1) there is no genuine issue as to any material fact, and (2) the moving party is entitled to judgment as a matter of law. The moving party has the burden of establishing the absence of a genuine issue of material fact. *Securities and Exchange Commission v. Murphy,* 626 F.2d 633, 640 (9th Cir.1980). All reasonable doubts as to the existence of a genuine issue of material

fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). In addition, the inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Where different ultimate inferences can be drawn, summary judgment is inappropriate. *Sankovich v. The Life Insurance Company of North America,* 638 F.2d 136 (9th Cir.1981).

## LAW

When Congress extended minimum wage coverage to domestic service workers, it excluded domestic workers who provided companionship services. The 1974 Amendments to the FLSA (Amendments) exclude the following from minimum wage coverage:

> Any employee employed on a casual basis in domestic service employment to provide baby sitting services or any employee employed in domestic service employment to provide *companionship services for individuals who (because of age or infirmity) are unable to care for themselves* (as such terms are defined and delineated by regulations of the Secretary).

29 U.S.C. § 213(a)(15) (emphasis added). Department of Labor regulations define companionship services as follows:

> As used in Section 13(15)(a) of the Act, the term *'companionship services' shall mean those services which provide fellowship, care, and protection* for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They *may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent* of the total weekly hours worked.

> The term 'companionship services' *does not include services* relating to the care and protection of the aged or infirm *which require and are performed by trained personnel, such as a registered or practical nurse.* While such trained personnel do not qualify as companions, this fact does not remove them from the category of covered domestic service employees when employed in or about a private household.

29 CFR 552.6 (emphasis added).

## FACTUAL BACKGROUND

Oregon provides in-home service care to qualified elderly, blind, and disabled recipients of public assistance. This allows the recipients to stay at home and avoid institutionalization. The program also saves the state money in the long run by avoiding the high costs of institutionalization.

SSD sets the policies for paying the attendants, while AFSD makes the actual payments. SSD changed its policies on April 1, 1985. Because the period in question here involved both the new and the old policies, both will be outlined here.

*Policies Before April 1, 1985.* The previous SSD manual provided for four types of in-home services—homemaker, companionship, housekeeper/chore, and personal care services. (Complaint, Ex. B, at 4–5). Plaintiffs contend that only the latter three types are particularly relevant here, and defendants do not dispute this.

Housekeeper/chore services were defined in the SSD manual as basic housekeeping tasks for persons unable to do these tasks, including housecleaning, food shopping, laundry, and meal service. Housekeepers had to have a minimum of sixteen hours of training, which was to include first aid, home safety and maintenance, and an orientation to working with the elderly. Services were to be supervised by the client or the family. (*Id.,* at 12–17).

Personal care services were defined as a "supportive in-home service program designed to maintain, strengthen, or restore individuals functioning in their own homes

when the individual's condition is stabilized and medical (RN) supervision *is* indicated and *when care is not rendered by a family member." (Id.,* at 23) (emphasis in original). Physicians were required to prescribe the services, which had to be supervised by an RN. The services were not to include skilled nursing services. Tasks included bathing the client, assisting with medication, maintaining catheters and colostomy bags, and assisting with self-administered medication and oxygen. Only Certified Nursing Assistants who had passed a 60 hour training course could provide personal services. (*Id.,* at 23–30).

Companionship services were defined as providing "fellowship, care and protection for a person, who, because of advanced age or mental infirmity, cannot care for his/her own needs." The "major purpose" of a companionship service provider was "being there." The "legal basis" for this type of service was the FLSA's companionship services exclusion. No training was required. (*Id.,* at 11).

The manual provided that when a disabled person applied for services, a SSD caseworker assessed the client's needs and developed a plan of necessary in-home services. A task time-table set out standard time allotments for the various types of tasks. The manual also set wage rates for each type of service, and maximum daily, weekly, and monthly payments for each type of service. Companionship services were paid at $1.50 per hour, to a maximum of $361 per month. Housekeeping services were paid at $3.35 per hour, the current minimum wage, to a maximum of $140 per month. Personal care services were paid at $3.55 per hour. Most live-in providers could earn up to $646 per month for all types of services. Live-in providers for quadriplegic clients could earn up to $887 per month. (*Id.,* at 39–41). Because pay rates depended on the type of service, rather than the attendant's qualifications, a Certified Nursing Assistant received different rates for different types of work.

The new rules divide in-home services into two types—tasks involving "Activities of Daily Living" (ADL) and tasks involving "Self-Management Activities" (SMA). ADL are defined as eating, dressing, personal hygiene, mobility, bowel and bladder care, and behavior. OAR 411–30–020(1). SMA are defined as medication management, transportation, meal preparation, shopping, and household maintenance. OAR 411–30–020(31). The new rules also divide ADA and SMA into three levels, by level of client care needed for each separate activity.

Caseworkers assess the clients' ADA and SMA needs for different activities. The new rules also set maximum monthly hours for ADL and SMA at the three care levels. The more dependent the client, the more hours authorized per activity. OAR 411–30–022.

The new rules also set maximum hour and pay rates. ADL tasks are generally paid at $3.35 per hour, with a slight increase at the highest care level. OAR 411–30–022(2)(b)(A)(iii). SMA are paid at $3.55 or $1.55 per hour, depending on whether the attendant is required to be paid at the federal minimum wage. OAR 411–30–022(2)(b)(B)(iii). The maximum monthly payment to each attendant is $892.95 per month. OAR 411–27–000(4)(c).

Under both the new and the old rules, SSD provided a monthly invoice to each attendant, stating maximum hours and maximum pay for each kind of service. In addition to their wages, live-in attendants also received room and board in the client's home. Under the old rules, SSD treated this as compensation for additional hours spent in the home, including nighttime hours. (Complaint, Ex. B, at 38).

Both the new and the old rules limit attendants' work to eight hours per day. Plaintiffs contend that many are required to be present at their clients' homes from eighteen to twenty hours daily. This, and the fact that some hours are paid at less than the minimum wage, leaves plaintiffs' average wage below the federal minimum wage.

There is evidence that some of plaintiffs' clients are functional quadriplegics, and

that these clients need nearly constant care with only short breaks during a seven day work week. Care for these clients includes personal care, housework, bill paying, and driving. Undisputed evidence shows that some plaintiffs work far in excess of authorized hours, and there is evidence that SSD caseworkers are aware of this. Finally, there is evidence that at times the state has relied on uncertified attendants to provide care. Client complaints regarding attendants' conduct are not unusual, and plaintiffs contend it is difficult to attract quality workers because of the low wages paid them.

## DISCUSSION

Plaintiffs have identified six issues that they ask the court to rule on as a matter of law. I rule on each issue, as well as on an additional issue remaining from the summary judgment motions.

### 1. The companionship services exclusion applies.

Plaintiffs provide companionship services as defined by the Department of Labor regulation. They provide fellowship, care, and protection for disabled persons who cannot care for their own needs. 29 CFR 552.6.

Plaintiffs make a strong policy argument. Nevertheless, the language of FSLA Amendments and the interpretive regulations make it plain that live-in attendants like plaintiffs are entitled to the minimum wage only if they fit within the exceptions, or "limitations," for trained personnel or for workers providing at least twenty percent general household work.

Plaintiffs point out that they are more than companions. Like other domestic service workers guaranteed a minimum wage, they act as "cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers ... and chauffeurs...." 29 CFR § 552.3 (defining domestic service employment). The regulations permit this, however, by allowing a "companion" to work up to twenty percent of work hours doing general household work, and to spend an apparently unlimited amount of time doing more personal tasks such as meal preparation, bed making, and washing the client's clothes.

Plaintiffs point out that the legislative history indicates that "[p]eople ... employed in the excluded categories are not regular bread-winners or responsible for their families' support." H.R.Rep. No. 913, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 2811, 2845. While the House report did not anticipate that companionship service workers would rely primarily on companionship wages for their support, the Amendments and the regulations do not preclude this possibility.

Plaintiffs also argue that they are not casual workers, but full time care workers on call twenty-four hours a day. Both the Amendments and the regulations, however, apply the "not casual" exception to babysitting, and not to companionship services. The Amendments create the exclusion for "[a]ny employee employed on a casual basis in domestic service employment to provide babysitting services or any employee employed in domestic service employment to provide companionship services...." Casual refers only to babysitting. The regulations make clear that the "not casual" exception applies only to babysitters, not companions. 29 CFR § 552.106 ("'casual' limitation does not apply to companion services"); *see also* 29 CFR §§ 552.3, 552.5, 552.104 (applying casual limitation to babysitters only).

Plaintiffs also rely on *Bonnette v. California Health and Welfare Agency*, 414 F.Supp. 212 (N.D.Cal.1976), 525 F.Supp. 128 (N.D.Cal.1981), *aff'd*, 704 F.2d 1465 (9th Cir.1983). In that case, chore service workers for elderly and infirm recipients of public aid contended they were entitled to the minimum wage. In denying defendants' summary judgment motion, the district court found that the amount of time the workers devoted to general household work was a triable fact issue. The court also refused to find as a matter of law that the workers provided companionship services, noting that California's own regulations

defined chore services to include household tasks and repairs. 414 F.Supp. at 214. The court eventually found for plaintiffs, 525 F.Supp. at 139–40, and the Ninth Circuit affirmed.

No published opinion, however, reaches a final decision as to whether the companionship exclusion applies to chore service workers. Even if chore workers do not fit within the exclusion, I cannot reach the same conclusion on these facts. Unlike the plaintiffs here, the chore workers apparently did not live with the recipients. *See* 525 F.Supp. at 132 (chore workers chosen by proximity to recipient and availability of transportation). Given this fact, it is much more likely that the workers either did not provide companionship services, or performed more than twenty percent general household work. By living with the client, plaintiffs here also receive a de facto payment for room and board.

■ Plaintiffs do not attack the Amendments. They only recently attacked the Department of Labor regulations. I defer to the regulations, and hold that plaintiffs perform "companionship services" within the language of the FLSA. *See Griggs v. Duke Power Co.*, 401 U.S. 424, 433–34, 91 S.Ct. 849, 854–55, 28 L.Ed.2d 158 (1971) (Department regulations not binding on courts, but entitled to great weight). Thus plaintiffs will enjoy minimum wage coverage only if they fit within the trained personnel or general household work exceptions.

2. *Plaintiffs do not fit within the "trained personnel" exception.*

■ The exception applies to "trained personnel, such as a registered or practical nurse." 29 CFR § 552.6. Plaintiffs, who presumably are all Certified Nursing Assistants (CNAs), do not fit within the exception.

The formal training received by CNAs is not sufficiently similar to that received by registered (RNs) or licensed practical nurses (LPNs). The training for LPNs is no less than one academic year, and the training for RNs is no less than two academic years. OAR 851–056(2)(a). CNAs, by contrast, receive only sixty hours of training, which must be completed in no more than eight weeks, and can be completed in one and a half weeks. OAR 851–20–113(2); (Defendant's Motion for Summary Judgment, Affidavit of Sandra Stone, at 2). While the required curriculum for CNAs is an ambitious one that includes many diverse subjects, the short length of the course cannot provide the depth of training required for RNs or LPNs. Given the long list of subjects in the CNA curriculum, finishing the course in sixty hours requires a fairly cursory treatment of the many subjects, unlike the course requirements for RNs and LPNs. *Compare* OAR 851–20–113(3) (curriculum for CNAs) *with* OAR 851–20–056(6), (7) (curriculum for RNs and LPNs). RNs and LPNs must also study some subject areas that are not included in the CNA curriculum, and must also pass licensing examinations, which require further preparation and study. ORS 678.021; OAR 851–20–156. Given these differences, I cannot equate the training given CNAs with that given RNs and LPNs.

In their motion for reconsideration, plaintiffs ask that I consider not only the formal training CNAs receive, but also their on-the-job training and the general skill required to perform their jobs. Plaintiff Jay McCune, for example, has been trained by his client's physician to perform catheter insertions and to administer medications to his client, a functional quadriplegic. McCune contends that the client's physician permits McCune to perform these tasks even though Oregon law requires that they be performed by a RN, because there are not enough RNs available.

Plaintiffs have not cited any statutes or regulations that allow only RNs to perform these tasks. Oregon regulations require that CNAs study and perform numerous tasks associated with elimination, which could conceivably include inserting catheters. *E.g.,* OAR 851–20–113(3)(b)(D), (3)(b)(E), (4)(b)(F), (4)(b)(G). Oregon law also provides that CNAs may obtain further certification allowing them to adminis-

ter non-injectable medications, after completing a second sixty hour training course that includes at least twenty-four hours of clinical practice. OAR 851–20–122, 123. Plaintiffs have not cited any evidence that McCune or any of the plaintiffs completed this course.

I cannot find that McCune's on-the-job training entitles him to "trained personnel" status. If McCune is forbidden from performing these additional tasks, it would be improper for me to reward him for doing so, regardless of his good intentions. The exception applies to services *"which require and are performed by* trained personnel, such as a registered or practical nurse." 29 CFR § 552.6 (emphasis added). If RNs or LPNs are required to perform these tasks, then McCune and the other plaintiffs cannot fit within the exception by virtue of their on-the-job training.

Recognizing informal training would also create an administrative nightmare for the state, which could not rely on uniform certification standards, but would instead have to rely on an ongoing, case-by-case evaluation of each attendant's particular experience. A judge or jury is no more qualified to make such a determination, and I am unwilling to do so.

3. *Tasks related to care of the individual are not included in the general household work exception.*

■ This exception provides that if general household work exceeds twenty percent of total weekly hours, then minimum wage coverage applies. Household work related to the care of the individual is not included in the twenty percent figure.

> [Companionship services] may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not

exceed twenty percent of the total weekly hours worked.

29 CFR § 552.6.

Plaintiffs contend that all household work should count towards the twenty percent figure, whether the work is general or related to the individual. They argue that the distinction drawn by the regulation is unworkable. For example, they argue that it is illogical to distinguish between cleaning the client's bedroom, and cleaning his living room. The regulation does not require such a distinction. Dusting or cleaning either room appears to be routine, general household work, rather than work related to the individual. Cleaning a spill by the client in either room, by contrast, would be non-routine care more related to the individual than to the general household, and would not be included in the twenty percent figure.

The regulation defines care related to the individual as including meal preparation, bed making, washing of clothes, and "other similar services." These similar services would presumably include other types of personal care, such as bathing, feeding, or cleaning spills.

I also decline to adopt defendants' current interpretation of general household work. The state's interpretative regulations deserve considerable deference, but they must follow the plain language of the federal regulation they interpret. SSD's current rules provide an exception if "housecleaning" hours exceed twenty percent of all household work. OAR 411–30–030. "Housecleaning" is defined as "tasks required to clean a house, such as care of surfaces, appliances, and furniture; washing dishes; and laundry." OAR 411–30–020(18). This rule appears to define "general household work" too narrowly, as it limits household work to cleaning and does not include other household tasks, such as routine maintenance or even mowing the lawn. The rule also appears too broad in other respects, in that it fails to treat washing the client's clothes as care related to the individual, unlike the federal regulation.

Plaintiffs also argue that defendants are estopped from raising the general household work exception. Plaintiffs point out that the "old" SSD manual, written before this action began, defined general household work as including "personal care" tasks. (Complaint, Ex. B, at 11). There is evidence that SSD administrators followed this interpretation, and adopted a narrower interpretation similar to the federal regulation only after this action was filed. There is also evidence that caseworkers who authorized plaintiffs' working hours were unaware of the twenty percent limitation for a substantial period in question here, and that the record keeping by caseworkers and CNAs consequently did not accurately reflect the general household work exception.

Estoppel is unwarranted. Plaintiffs do not bring a claim for violation of state regulations. Thus I rely on the federal regulation, rather than the SSD manual. The lack of adequate record keeping may present a more difficult problem at trial, but at this time I am unwilling to preclude defendants from raising the general household work exception. If records fail to accurately distinguish between the two types of work, then the issue may be resolved through testimony by plaintiffs, their clients, caseworkers, and others with knowledge of the hours authorized and the hours actually spent performing general household work. Problems created by the inaccuracy of the current SSD rule can be resolved in a similar fashion.

4. *Covered plaintiffs are entitled to payment for each hour of authorized work, to the extent limits on authorized work were reasonable.*

█ Plaintiffs ask that I rule that they should be paid for each hour actually worked, rather than for only those hours actually authorized by SSD. The parties agree that this is a legal issue that can be decided before trial. I find that plaintiffs who are covered by the FLSA's minimum wage provision should be paid for each hour of authorized work, to the extent that

limits on authorized work are reasonable. If defendants knew that plaintiffs were working more hours than authorized, then defendants will also be required to pay for the hours of work which they allowed plaintiffs to perform without adequate objection.

Department of Labor regulations enacted pursuant to the FLSA exempt domestic service workers from the FSLA's overtime requirements. The regulations do provide, however, that domestic service workers are entitled to receive the minimum wage for every hour they work.

(a) . . .

[The overtime] exemption [for domestic service workers] does not excuse the employer from paying the live-in worker at the applicable minimum wage rate for all hours worked. In determining the number of hours worked by a live-in worker, the employee and the employer may exclude, by agreement between themselves, the amount of sleeping time, meal time, and other periods of complete freedom from all duties when the employee may either leave the premises or stay on the premises for purely personal pursuits. For periods of free time (other than those relating to meals and sleeping) to be excluded from hours worked, the periods must be of sufficient duration to enable the employee to make effective use of the time. If the sleeping time, meal periods, or other periods of free time are interrupted by a call to duty, the interruption must be counted as hours worked. . . .

(b) Where there is a reasonable agreement, as indicated . . . above, it may be used to establish the employee's hours of work in lieu of maintaining precise records of the hours actually worked. The employer shall keep a copy of the agreement and indicate that the employee's work time generally coincides with the agreement. If it is found by the parties that there is a significant deviation from the initial agreement, a separate record should be kept for that period

or a new agreement should be reached that reflects the actual facts.

29 CFR § 552.102.

The written agreement between each plaintiff and SSD and the SSD invoices provide for a maximum number of authorized hours. Provided that the agreements are reasonable, they should be upheld. *See id.*

Other Department of Labor regulations provide, however, that employees must be paid not only for all hours that they are required to work, but also all hours that the employer suffers or permits. 29 CFR 778.223, 778.11. If an employer announces that no overtime will be permitted, or that overtime will not be compensated unless authorized in advance, the employee must still be compensated for work that he is suffered or permitted to perform. 29 CFR 778.316. These regulations appear to apply generally to all covered workers, including those providing domestic services.

Defendants argue that to require them to pay for all hours worked would contravene Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* Title XIX, which allows states to disburse federal funds through in-home service programs, also grants states the power to "provide such methods and procedures relating to the utilization of and payment for care and services ... as may be necessary ... to assure that payments are consistent with efficiency, economy and quality of care." 42 U.S.C. § 1396a(a)(30). Title XIX also requires the states to assure that average per capita cost of community based care does not exceed that of institutional care. Relying on these provisions, defendants argue that they should be allowed the flexibility to assign maximum hours, which should be respected by the courts.

Title XIX allows SSD to devise procedures designed to regulate and account for hours worked. It does not, however, permit defendants to avoid paying for work they suffered or permitted plaintiffs to perform. Title XIX does not create an exception to the FSLA and Department of Labor regulations interpreting it. Defendants

have also failed to cite evidence showing that paying plaintiffs a minimum wage will cause the cost of in-home care to exceed that of institutionalized care.

To determine whether SSD authorized, suffered, or permitted the additional hours worked by plaintiffs, I will apply general principles of agency. Knowledge of SSD case workers might therefore be imputed to SSD. Plaintiffs contend I should treat SSD and the clients as joint employers, and impute knowledge of the clients to SSD. It is true that the *Bonnette* court treated clients and a state agency as joint employers for purposes of minimum wage coverage. I am unwilling, however, to extend *Bonnette* to these facts. While SSD and the clients are joint employers as to many terms of employment, SSD implicitly reserves the right to limit the hours worked by attendants. Title XIX does allow states to devise procedures assuring efficiency and economy. 42 U.S.C. § 1936a(a)(30). Oregon should therefore be allowed to unilaterally place reasonable controls on hours worked.

Plaintiffs are entitled to payment only for authorized hours, to the extent SSD limitations were reasonable, and to the extent SSD did not knowingly suffer or permit plaintiffs to work additional hours.

5. *Defendants have not as a matter of law admitted violations of the FLSA prior to the new state regulations.*

Plaintiffs contend that defendants have admitted that their former record keeping and payment practices were flawed. As a result, plaintiffs believe that defendants violated the FLSA as a matter of law. I disagree.

As discussed earlier, SSD issued new regulations on April 1, 1985. Plaintiffs point particularly to the new regulations regarding general household work. They also contend that state officials have admitted in depositions that before the new regulations were issued, SSD failed to take account of the exception. The old SSD manual also failed to make it clear that when

the twenty percent limit was exceeded, Department of Labor regulations required that the attendants be paid for all of their work regardless of its type. The new SSD rules take note of the twenty percent figure for general household work. OAR 411–30–030.

■ The concessions by state officials do not show a violation of the FLSA as a matter of law. Plaintiffs cite no FLSA provision or Department of Labor regulation that makes the failure to keep adequate records a *per se* violation of the FLSA.

As I indicated in Section 4 of the opinion, whether plaintiffs fit within the general household work exception is a fact issue in each case. While it may be difficult to account for the hours worked by each plaintiff, this issue can still be resolved through testimony by those with direct knowledge of the hours plaintiffs worked.

**6.** *Defendants may not rely on the letter from the Wage and Hour Divisions's Area Director.*

Defendants wish to rely on legal interpretations in a letter from a federal official. While I originally found that defendants could rely on the letter, I later notified the parties that given recent submissions on the issue, I had reconsidered my ruling.

State officials are immune from FLSA liability when they act in good faith on rulings or interpretations of the "Administrator of the Wage and Hour Division of the Department of Labor." 29 CFR 590.-12(a).

After this action was filed, a state official wrote the Portland office of the Wage and Hour Division (Division) requesting opinions on several issues involved here, such as the exceptions for household work and trained personnel. (Defendants' Affidavit in Opposition to Plaintiffs' Motion to Maintain Class Action and in Support of Defendants' Motion to Dismiss, at 29–30). Stanley Simpson, a Division Area Director, sent a letter in reply. The letter includes several interpretations that are favorable to defendants. Defendants wish to rely on the letter, at least from the date on which it was written.

The immunity regulation requires that interpretations be by the Division Administrator, not by an Area Director. A Division handbook provides, however, that Area Directors may sign responses to requests for interpretations of the FLSA. When legal questions and novel policy questions are involved, other steps must be taken. (Affidavit of Luther L. Jensen in Opposition to Plaintiffs' Motion for Summary Judgment, at 3, 4).

In response to a letter from plaintiffs' counsel, an attorney with the Department of Labor's Regional Solicitor states that defendants may not rely on an interpretation by an Area Director, and that the immunity regulation does not apply. (Plaintiffs' Supplemental Memorandum Concerning Issues to be Decided Prior to Trial, at 4–6). Neither the inquiry from plaintiffs' counsel nor the response from the Solicitor, however, mention the Division handbook provision delegating authority to the Area Director.

■ Given the uncertainties regarding the Area Director's authority, I do not rely on the Simpson letter.

**7.** *Plaintiffs may pursue declaratory relief, but not injunctive relief.*

Plaintiffs and defendants both moved for summary judgment on the availability of declaratory and injunctive relief. While plaintiffs did not list this among their dispositive six issues, given the imminent appeal a ruling may be helpful.

The FLSA does not authorize actions by employees for injunctive relief. While 29 U.S.C. § 217 gives the district courts jurisdiction over actions to enjoin minimum wage violations, 29 U.S.C. § 206 makes it plain that the power to seek injunctive relief is generally reserved to the Department of Labor. *Bowe v. Judson C. Burns, Inc.,* 137 F.2d 37, 39 (3d Cir.1943); *see also, Lorillard, Inc. v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 870, 55 L.Ed.2d 40 (1978) (collecting cases). Plaintiffs' reliance on section 217 is misplaced.

Alternatively, plaintiffs argue that injunctive relief is authorized through the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202 (Act). Plaintiffs may seek declaratory relief under section 2201 of the Act. Several courts have entertained declaratory judgment actions to enforce the FLSA. *E.g., Maneja v. Waialua Agricultural Co.*, 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040 (1955). Plaintiffs contend that if the court grants declaratory relief, they may seek injunctive relief pursuant to § 2202 of the Act, which authorizes a court granting declaratory relief to issue "further relief," such as an injunction. Defendants contend that plaintiffs should not be able to obtain relief through the Act that they cannot obtain directly through the FLSA. I agree.

Plaintiffs may seek declaratory relief. Their prayer for injunctive relief is stricken.

### CONCLUSION

Plaintiffs fit within the companionship services exclusion. To obtain minimum wage coverage, they must fit within the trained personnel or general household work exceptions. Plaintiffs' motion for summary judgment on this issue is denied, and defendants' motion is granted.

CNAs do not fit within the trained personnel exception. Plaintiffs' motion for summary judgment on this issue is denied, and defendants' motion is granted.

Tasks unrelated to the care of the individual are included in the general household work exception. Plaintiffs' motion for summary judgment on this issue is denied. Defendants' motion is granted only as to this narrow issue. Evidence regarding general household work may include records as well as testimony by plaintiffs, clients, and others.

Plaintiffs who fit within the general household work exception are entitled to payment for each hour of authorized work during covered periods, to the extent limits on authorized care are reasonable, and to the extent defendants did not suffer or permit plaintiffs to perform the additional hours. Plaintiffs' and defendants' summary judgment motions are granted in part and denied in part on this issue.

Defendants have not as a matter of law admitted violations of the FLSA prior to April 1, 1985, the date the new SSD rules became effective. Plaintiffs' motion for summary judgment on this issue is denied, and defendants' motion is granted.

Defendants may not rely on the letter from the Wage and Hour Division's Area Director. Plaintiffs' motion for summary judgment on this issue is granted, and defendants' motion is denied.

Plaintiffs may pursue declaratory relief. Their prayer for injunctive relief is stricken. Both motions on these issues are granted in part and denied in part.

Plaintiffs' motion for reconsideration is denied.