Dale Jean **TERWILLIGER** on behalf of herself and all other employees of Home of Hope, Inc. similarly situated, Plaintiff,

v.

**HOME OF HOPE, INC., Defendant.**

No. 96–C–1042–H.

United States District Court, N.D. Oklahoma.

May 21, 1998.

Gerald Robert Lee, Pryor, OK, for Plaintiffs.

Steven Ernest Holden, Terry Scott O'Donnell, Karen Marie Grundy, Best, Sharp, Holden, Sheridan, Best & Sullivan, Brian E. Dittrich, Mills & Whitten, Tulsa, OK, for Defendants.

Mark Lawton Jones, Office of Atty. Gen., Oklahoma City, OK, for Oklahoma Dept. of Human Services, amicus.

D. Kevin Ikenberry, Stephen L. Andrew & Assoc., Tulsa, OK, for Gatesway Foundation, Inc., amicus.

## ORDER

HOLMES, District Judge.

This matter comes before the Court on a motion for summary judgment (Docket # 55) by Defendant Home of Hope, Inc. ("Home of Hope") and a motion for summary judgment contained in three volumes (Docket # 57, 58, 59) by the remaining Plaintiffs in this suit. Home of Hope seeks summary judgment regarding the claims for overtime compensation and use of the companionship services exemption by these Plaintiffs. A hearing was held in this matter on April 10, 1998. The Court also viewed two homes of Home of Hope clients on April 24, 1998.

## I

Summary judgment is appropriate where "there is no genuine issue as to any material fact," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Windon Third Oil & Gas Drilling Partnership v. Federal Deposit Ins. Corp.*, 805 F.2d 342, 345 (10th Cir.1986), and "the moving party is entitled to judgment as a matter of law," Fed.R.Civ.P. 56(c). In *Celotex*, the Supreme Court stated:

> [t]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. at 322, 106 S.Ct. 2548.

A party opposing a properly supported motion for summary judgment must offer evidence, in admissible form, of specific facts, Fed.R.Civ.P. 56(e), sufficient to raise a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ("The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248, 106 S.Ct. 2505.

Summary judgment is only appropriate if "there is [not] sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 250, 106 S.Ct. 2505. The Supreme Court stated:

> [t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Id.* at 252, 106 S.Ct. 2505. Thus, to defeat a summary judgment motion, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (citations omitted).

In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 250, 106 S.Ct. 2505. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir.1991).

## II

For purposes of this motion, the Court accepts as true the following facts agreed to by the parties:

1. This case arises out of a dispute regarding overtime wages originally filed by Plaintiff, Dale Jean Terwilliger, on November 12, 1996, on behalf of herself and all other similarly situated employees at Home of Hope.

2. On June 18, 1997, Plaintiff's counsel filed an Amended Complaint on behalf of 50 employees who wished to participate in this litigation.

3. Based on the companionship services exemption found at 29 U.S.C. § 213(a)(15), certain personnel in the Supported Living Program, including Habilitation Training Specialists ("HTS") personnel and House Managers, were not paid for overtime incurred during the relevant time.

4. Home of Hope's Supported Living Program provides services for adult clients with developmental disabilities.

5. The Plaintiffs involved in this lawsuit were employed in Home of Hope's Supported Living Program either as HTS personnel or House Managers during the period of time from June 30, 1994 to July 1, 1996.

6. The job duties of an HTS worker include assisting clients with developmental disabilities with daily living needs, as well as providing incidental training and other support as needed.

7. The job duties of a house manager including supervising small groups of other HTS personnel working in the client's home, as well as providing assistance to individual clients with daily living needs and training.

8. Home of Hope's Supported Living Program has been in existence since 1989.

9. The services that Home of Hope provides to its clients are governed by a series of contracts with the Oklahoma State Department of Human Services ("DHS"). These contracts require that individuals receiving services provided for by the contracts receive those services in a home owned or leased by the individual.

10. The majority of Home of Hope's clients in its Supported Living Program are former residents of the Hissom Memorial Center.

11. The clients currently range in age from approximately twenty-years old to fifty-years old, with an average age of thirty-nine.

12. The purpose of Home of Hope's Supported Living Program is to provide supervision, habilitation, protection, incidental training and assistance with the activities of daily living to these clients in their own homes.

13. At the time of filing of the motions, there were forty-five clients in the Supported Living Program residing in twenty-seven homes. Ten of the twenty-seven homes, or thirty-seven percent, have a single client.

14. Six of the homes, or twenty-two percent of the total, are owned by the client or his or her legal guardian.

15. Typically, there are no more than two clients residing in each of the remaining seventeen homes.

16. The client can affect changes in staff at his or her home at any time for any reason. Many of the Plaintiffs in this lawsuit, for example, have been replaced in a particular home at the request of a client.

17. The client can change providers from Home of Hope to another agency at any time. In the event of a change in providers, the home stays with the client.

18. The client chooses the paint and decor of his or her own house, and no two houses are alike.

### III

Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, hourly workers must be compensated at a rate one-half times the regular rate for hours worked in excess of forty hours per workweek. 29 U.S.C. § 207(a)(1).[1] An exemption to this general rule is found in the provision dealing with "companionship services." This exemption states that the overtime requirements in § 207 do not apply to:

> any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary).

29 U.S.C. § 213(a)(15). Thus, to be covered by this exemption, employees must be engaged in "domestic service employment" and must perform "companionship services."

Initially, the Court notes that exemptions from the FLSA must be narrowly construed. *A.H. Phillips, Inc. v. Walling*, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945). Moreover, as the Tenth Circuit has stated:

> [a]n employer who asserts he is exempt from the Act "has the burden of establishing the exemption affirmatively and clearly." The Act constitutes humanitarian and remedial legislation. Exemptions must be narrowly construed and are limited to those establishments plainly and unmistakably within the terms and the spirt of the exemption invoked."

*Schoenhals v. Cockrum*, 647 F.2d 1080, 1081 (10th Cir.1981) (citation omitted).

---

**1.** Home of Hope does not dispute that it is an employer covered by the overtime provisions of the FLSA.

## A

As noted above, to fall within the companionship services exemption, an employee must first be classified as a domestic service employee. "Domestic service employment" includes "persons who are frequently referred to as 'private household workers.'" 29 C.F.R. § 552.101(a). The term "domestic service employment" is defined in the regulations as "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R. § 552.3.[2] "However, a dwelling house used primarily as a boarding or lodging house for the purpose of supplying such services to the public, as a business enterprise, is not a private home." H.R.Rep. No. 93–913, at 74 (1974), U.S. Code Cong. & Admin. News at 2811. Thus, the determinative factor in domestic service employment is that the employment must occur in a "private home."

 Plaintiffs contend that they did not perform services in the private homes of Home of Hope clients and thus are not covered by the companionship services exemption. In determining whether a living arrangement is a "private home," instead of an institution or business enterprise, courts look to several factors concerning the residence. These factors include: (1) its source of funding; (2) access to the facility by the general public; (3) whether it is organized for profit or is a nonprofit organization; and (4) the size of the organization. *Bowler v. Deseret Village Assoc., Inc.*, 922 P.2d 8, 13–14 (Utah 1996) (footnotes omitted). Additionally, the Northern District of Oklahoma has considered the following facts in deciding that residences were not private homes for purposes of the statute:

Defendant acquires the residences for the clients as well as the furniture for the residences. Defendant maintains a set of keys to the residences. Defendant makes decisions as to the number of people who

live in the homes, often placing two or three people together in a residence. The Defendant retains substantial authority in determining the composition of the homes. The clients who reside together are unrelated and grouped together for purposes of treatment and training. Although the clients are signatories on the leases, the Defendant also signs the leases in many situations. The clients do not pay the rent to the landlord. Instead, almost all of the money is paid directly by the state to the Defendant. In turn, those sums are paid to the landlord.

*Linn v. Developmental Servs. of Tulsa, Inc.*, 891 F.Supp. 574, 579 (N.D.Okla.1995). *See also Lott v. Rigby*, 746 F.Supp. 1084, 1087 (N.D.Ga.1990) (stating that a state-funded group residence is not a "private home" merely because the residents "participate in parts of its upkeep in order to learn home management skills").

In the instant case, Home of Hope claims that its employees provide services in private homes due to the legal interests the clients have in ownership or possession of their homes and the degree of control exercised over those homes by the clients. Specifically, Home of Hope states that all of the homes are either owned by their clients or are leased by their clients from independent third parties, with the client's name appearing on the lease. Home of Hope also argues that its clients exercise a significant degree of control over their home environment since they choose whether they will have a roommate and who that roommate will be. Clients also choose the specific home in which they live, as well as the specific furnishings for that home. Home of Hope clients also can choose their particular provider and can change providers at will. Finally, Home of Hope employees do not perform maintenance on the homes and only have keys to the premises for emergency

---

2. In a supplemental submission, Plaintiffs argue that the private home exception does not apply since they were employed by Home of Hope and not the individual clients, relying on the language "by whom he or she is employed." As Defendant notes, however, this construction is inconsistent with 29 C.F.R. § 552.109(a). Further,

Plaintiff has identified no authority, and the Court is unable to locate any, that supports this view of the companionship services exemption. In fact, the Court is not aware of any cases where the subject employees were employed by the individual client, rather than by an agency.

use, pursuant to express permission from the client.

In contrast, Plaintiffs claim that the residences of Home of Hope clients are not "private homes" since "[m]ost people in America do not have a staff of people 'in their homes' assisting them with practically every daily task." Pl.'s Resp. Br. at 3. Further, Plaintiffs argue that the contracts between Home of Hope and the Oklahoma Department of Human Services give Home of Hope control over virtually everything that occurs within the client's residence, including the negotiation and leasing of the homes. Plaintiffs also contend that Oklahoma provides practically all of the money to support the residences and that Home of Hope controls how the money is spent. Further, Plaintiffs point to the deposition testimony of David Finley, who stated that Home of Hope leases vehicles for clients in Home of Hope's name and maintains trust accounts for some clients, paying the utility bills out of these accounts. Finally, Plaintiffs allege that, based on the DHS contracts and the testimony of HTS employees, Home of Hope is responsible for the maintenance of the clients' residences.

The Court finds that the residences of Home of Hope clients are distinguishable from the residences in *Linn* and are "private homes" for purposes of the companionship services exemption. Unlike *Linn*, Home of Hope does not acquire either the residence or furniture for the client. Instead, 22% of the homes of Home of Hope clients are owned by the client or the client's parent or guardian, while the remaining residences are rented or leased in the client's names from third parties. Home of Hope does not co-sign the lease and has no property interest in the client's residence. Moreover, each client selects and purchases his or her own furniture in the home.

Second, unlike *Linn*, Home of Hope maintains a set of keys to the client's residence to be used only for emergencies or to be used with the client's express permission. Third, unlike *Linn*, the client, not Home of Hope, chooses whether he or she will have a house-

mate and who that housemate will be. In fact, ten of Home of Hope's twenty-seven homes are occupied by a single client.

Finally, the Court notes that, like *Linn*, Home of Hope pays the rent to the landlord from the client's trust account. This fact, however, is not determinative as to whether the Home of Hope clients live in "private homes." Construing the factors as a whole, the Court finds that the residences of Home of Hope clients are "private homes" as defined in the companionship services exemption. Accordingly, this requirement of the companionship services exemption has been established.

## B

In addition to being engaged in domestic service employment in a "private home," an employee must also provide "companionship services." Department of Labor regulations define "companionship services" as

> those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services.

29 C.F.R. § 552.6. In the instant case, it is clear that Plaintiffs were employed to provide fellowship, care, and protection for individuals of advanced age or infirmity.[3] For example, Plaintiffs assisted clients with dressing, grooming, administering medication, in addition to performing household chores and assisting clients in developing skills. Thus, this requirement of the companionship services exemption also has been established. Based on the above, the Court concludes that both requirements of the companionship services exemption have been satisfied.

---

**3.** At the hearing held in this matter on April 10, 1998, Plaintiffs agreed that they performed

"companionship services."

## IV

Therefore, Plaintiffs must be considered exempt from the FLSA overtime provisions unless they fall within one of the legal exceptions to the companionship services exemption. There are two exceptions in the regulations to the companionship services exemption:

(1) general household services exceeding twenty percent of the total weekly hours worked; and (2) services performed by trained personnel, "such as a registered nurse or practical nurse." When these exceptions apply, the exemption for companionship services cannot be used, and the general FLSA overtime rules govern.

*Linn,* 891 F.Supp. at 578 (citations omitted).[4] Plaintiffs claim that they are entitled to overtime compensation because they fall within both of these exceptions to the companionship services exemption.

### A

■ Plaintiffs first allege that they performed general household services in excess of twenty percent of the total weekly hours worked. Other courts considering this issue have held that household work not "directly related" to an individual resident is subject to the twenty percent limit. For example, one court has stated that:

[d]usting or cleaning the client's room or the living room "appears to be routine, general household work, rather than work related to the individual. Cleaning a spill by the client in either room, by contrast, would be non-routine care more related to the individual than to the general household, and would not be included in the twenty percent figure."

*Toth v. Green River Reg'l Mental Health/Mental Retardation Bd., Inc.,* 753 F.Supp. 216, 217 (W.D.Ky.1989) (quoting *McCune v. Oregon Senior Servs. Div.,* 643 F.Supp. 1444, 1450 (D.Or.1986), *aff'd,* 894 F.2d 1107 (9th Cir.1990)).

Further, another court has held that "general maintenance services, including cleaning laundry areas, general household cleaning (through use of mop, duster, and vacuum), washing vehicles, cleaning the garage, and maintaining the yards and grounds" constitute general household services. Although these services benefitted the individual residents, the court stated that the services were not "directly related" to the residents since they were ultimately provided to keep the residence clean for the benefit of all employees and the family members and friends of the residents. *Bowler,* 922 P.2d at 15.

In the instant case, Plaintiffs claim that they performed general household work totaling more than twenty percent of the total weekly hours worked. Specifically, Plaintiffs have submitted affidavits from HTS employees that state Plaintiffs performed general household work such as cleaning and grocery shopping at least twenty percent of the hours they worked each week. Plaintiffs further rely on the responses to Defendant's interrogatories, which indicate that Plaintiffs spent more than twenty percent of their time each week in general house cleaning activities.

■ In contrast, Home of Hope argues that its employees do not perform general household work, as defined in the regulations, because general household work is defined as services provided other than to a disabled, aged, or infirm individual. Defendant bases this construction upon the definition of "companionship services" in 29 C.F.R. § 552.106, and the parallel definition of babysitting services in 29 C.F.R. § 552.5. In effect, Defendant claims that although its employees clean and dust the clients' residences, the Court need not reach the question whether these services amount to more than twenty percent of the hours worked since Plaintiffs only perform these services with respect to a disabled or infirm individual.

4. The regulations creating these exceptions to the definition of "companionship services" provide in pertinent part as follows:

["Companionship services"] may also include the performance of general household work: *Provided, however,* That such work is incidental, i.e., does not exceed 20 percent of the total

weekly hours worked. The term "companionship services" does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse.

29 C.F.R. § 552.6.

The Court finds that Home of Hope's construction of the regulations concerning general household work must be rejected. To conclude that "general household work" only includes work performed for a non-disabled individual ignores the regulations, which expressly state that companionship services (services performed for the aged or infirm) can include general household services. *See* 29 C.F.R. § 552.6. Defendant's construction also ignores case authority, which focuses not on the nature of the person for whom the services are performed, but on whether the services are "directly related" to that individual. *See Bowler*, 922 P.2d at 15. Thus, the Court finds that the performance of general household work for a disabled individual does not exclude that work from the twenty percent household work exception.

Accordingly, the Court concludes that there are disputed issues of fact with respect to this claim which preclude the granting of summary judgment.[5] Home of Hope has not provided evidence which establishes that its employees did not spend more than twenty percent of their total weekly hours performing general household work. Although Home of Hope has indicated that some employees perform household work in order to assist clients with living skills, it does not indicate whether all employees performed similar household work to benefit other clients. Defendant's motion for summary judgment on this basis is hereby denied.

**B**

■ Second, Plaintiffs claim that they are entitled to overtime compensation because they are trained personnel. The regulations provide that the term companionship services "does not include services relating to the care and protection of the aged or infirm which require and are performed by trained personnel, such as a registered or practical nurse." 29 C.F.R. § 552.6.

As the Seventh Circuit has stated:

a domestic service employee who provides "companionship services" within the meaning of 29 U.S.C. § 213(a)(15) will not qualify for overtime compensation under the "trained personnel" exception of 29 C.F.R.

§ 552.6 unless (1) that employee's position involves the provision of services required to be performed by someone with training comparable in scope and duration to that of a registered or practical nurse, and (2) the employee in fact has received such training.

*Cox v. Acme Health Servs., Inc.*, 55 F.3d 1304, 1310 (7th Cir.1995). Moreover, "on-the-job training" is not recognized for the trained personnel exception because to do so would create an " 'administrative nightmare' for the state since each worker would constantly have to be reevaluated." *McCune*, 894 F.2d at 1111. *See also Sandt v. Holden*, 698 F.Supp. 64, 68 (M.D.Pa.1988) (holding that plaintiff, who had an eleventh grade education and who held no licenses, did not satisfy the trained personnel exception, even though having past experience as a health aide).

In applying this formulation, courts have held that training of twenty-seven hours, *Toth*, 753 F.Supp. at 218, sixty hours, *McCune*, 894 F.2d at 1110, and seventy-five hours, *Cox*, 55 F.3d at 1310, has not been training comparable in scope and duration to a registered or practical nurse such that the trained personnel exception would apply. In addition to the number of hours of training, courts have also examined the quality of instruction and training received in comparison to that received by a registered or practical nurse. *See id.* at 1310 (comparing home health aide's training to "the extensive training in the physical, biological, social and behavioral sciences that registered and practical nurses receive").

In the instant case, Plaintiffs claim that they were required to undergo 160 hours of training in basic education classes to maintain employment as an HTS and were required to complete 40 additional hours of training per year. This training is composed of: thirty-two hours of basic education in developmental disabilities; ten to twelve hours of CPR and first-aid; three hours of state-mandated HIV pathogen and hazardous communications training; and sixteen hours

---

**5.** Defendant agreed at the hearing on this matter that if the Court rejected its construction of the regulations, there exists a factual dispute as to the amount of time Plaintiffs performed general household work each week.

of training in medication administration, if the employee will be administering medication to the client.

Home of Hope employees hired after a certain date must also undergo state-mandated training in six modules concerning various disability-related issues. These classes consist of ethical and legal issues (four hours), health and safety (twelve hours), skill building (twelve hours), communication (eight hours), connections (eight hours), and nuts and bolts (four hours). Employees might also participate in special training courses, such as courses in seizures, limited physical mobility, and nutrition, depending upon the needs of the client whom the employee works with. The length of training in these special courses varies with each subject. Although Plaintiffs concede that they do not receive the same amount of training as a registered or practical nurse, they allege that they are nonetheless "trained personnel."

Home of Hope asserts that the employees are not trained personnel because "there are no special requirements for HTS workers or House Managers." Def.'s Reply Br. at 8. Home of Hope further relies on the deposition testimony of Home of Hope Education Training Coordinator Jacquie Bullock, who states that the training received by Plaintiffs was not equivalent to that of an registered or practical nurse and that HTS personnel are not certified or licensed in any manner.

The Court finds, as a matter of law, that the general training required of HTS personnel and House Managers is not training comparable in scope and duration to that of a registered or practical nurse. Although the training is somewhat more lengthy than the training in the other cases where employees were not considered trained personnel, the training required of Home of Hope employees mainly deals with interpersonal functioning and disability-related education, rather than extensive courses in science and biology that are required of registered or practical nurses.[6] Accordingly, the Court finds that Plaintiffs do not satisfy the trained personnel exception to the companionship services ex-

emption. Defendant's motion for summary judgment on this basis is hereby granted.

## V

Plaintiffs next move for summary judgment, claiming that Home of Hope's actions were "willful," thus entitling them to a three-year statute of limitations. Plaintiffs also move for summary judgment on their claim for liquidated damages in a sum equal to their claim for overtime wages.

## A

█ Plaintiffs first claim that they are entitled to a three-year statute of limitations. The statute of limitations governing FLSA claims states in pertinent part as follows:

the cause of action ... may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a). Thus, there is a two-year statute of limitations for most FLSA claims, while a three-year applies to willful violations.

█ In *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115 (1988), the Supreme Court described the standard for willfulness first articulated in *Trans World Airlines v. Thurston*, 469 U.S. 111, 125–30, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). Under this standard, Plaintiff must prove that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin*, 486 U.S. at 133, 108 S.Ct. 1677. In other words, "willful" is defined as "voluntary, deliberate, and intentional," rather than merely negligent, conduct. *Id.* The burden is on the employee to prove that the employer committed a willful FLSA violation. *See Gilligan v.*

6. The Court observes that the Oklahoma State Board of Nursing requires registered nurse programs to include sixty-four semester hours and practical nursing programs to include thirty-two semester hours or 1300 clock hours. Nursing Regulation 485: 10–5–9(b) & (c).

*City of Emporia, Kan.*, 986 F.2d 410, 413 (10th Cir.1993).

Plaintiffs allege that the following actions demonstrate that Home of Hope committed a willful violation of the FLSA in its use of the companionship services exemption: Home of Hope's Board of Directors did not read the regulations concerning the companionship services exemption; DiAnna Hoover, the Executive Director, did not know the job functions of HTS employees; Home of Hope did not seek the advice of the Department of Labor; Home of Hope did not seek the advice of a labor or employment law expert; the Executive Director merely relied on her impressions that other agencies were applying the exemption; the Board of Directors did not conduct a meaningful investigation before applying the exemption; Dick Lowry, the Board member who moved to apply the exemption, was a corporate attorney who did not recommend any action to determine if the exemption would apply; and Home of Hope did not revoke use of the exemption for five months after learning of the *Linn* decision.

In contrast, Home of Hope contends that its decision to apply the companionship services exemption was not a willful violation of the FLSA. Specifically, Defendant points to the following evidence to support its position: the Board of Directors obtained an opinion from its accountant before applying the exemption; Defendant consulted its labor attorney regarding the exemption; Defendant was aware that other providers were using the exemption and discussed with them their use of the exemption; the issue was discussed at several Board meetings prior to a vote; and Defendant discussed the *Linn* decision with an attorney, who stated that it was not applicable to Home of Hope's operations.

The Court finds that there are disputed issues of material fact which prevent the granting of summary judgment on this claim. Particularly, the Court finds that there are disputed issues of fact with respect to the length and type of investigations conducted by Home of Hope and its Board of Directors into the use of the exemption, as well as it consultations with outside experts. Because these disputed facts inform the issue of willfulness, Plaintiffs' motion for summary judgment on this claim is hereby denied.

## B

Plaintiffs also have moved for summary judgment on their claim for liquidated damages. The FLSA provides for liquidated damages in § 216(b), which states as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in additional equal amount as liquidated damages.

29 U.S.C. § 216(b).[7] The Court may, however, disallow liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. If the employer meets both the good faith and reasonable grounds conditions, "the court is permitted, but not required, in its sound discretion to reduce or eliminate the liquidated damages which would otherwise be required in any judgment against the employer." 29 C.F.R. § 790.22(b).

The good faith requirement ensures that "the employer have an honest intention to ascertain and follow the dictates" of the FLSA. *Renfro*, 948 F.2d at 1540. The requirement that the employer have reasonable grounds for believing that its actions complied with the statute "imposes an objective standard by which to judge the employer's behavior." *Id.* Moreover, an employer's ignorance of the requirements of the FLSA does not constitute reasonable grounds for believing that it complied with the statute. *Doty v. Elias*, 733 F.2d 720, 726 (10th Cir. 1984).

---

7. The Court notes that the purpose behind the award of liquidated damages is "the reality that the retention of a workman's pay may well result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Renfro v. City of Emporia, Kan.*, 948 F.2d 1529, 1540 (10th Cir.1991).

The Court notes that the "same willfulness standard for the statute of limitations issue applies to the liquidated damages issue." *Brinkman v. Department of Corrections of the State of Kan.,* 21 F.3d 370, 373 (10th Cir.1994). Since the Court finds that there are disputed issues of material fact as to whether Defendant's actions were willful, the Court also finds that there are disputed issues of material fact as to whether Defendant has acted in good faith and had reasonable grounds for believing that its actions did not violate the FLSA. Accordingly, Plaintiffs' motion for summary judgment on this basis is hereby denied.

## VI

For the reasons set forth above, Defendant Home of Hope's motion for summary judgment (Docket # 55) is hereby granted in part and denied in part. Plaintiffs' motion for summary judgment (Docket # 57, 58, 59) is hereby denied.

**IT IS SO ORDERED.**