**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 23 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

DEBORAH JOHNSTON, individually
and on behalf of others similarly
situated; DIANA RUSS, individually
and on behalf of all others similarly
situated; BRIDGET A. AMES;
RUSSELL APPLEGATE; LAJOYA A.
BARNES; SHARON BATES; BETTY
J. BAUCOM; HELEN BERRY;
JIMMY BOSTIC; ALETA BRITT;
ANGELINE C. BROOKS;
SHAWNDA L. BROWN; DAWNA
CAMPBELL; EDNA J. CRABTREE;
PRISCILLA CRUME; SANDRA D.
DEVILLE; TINA M. ENGLISH;
LINDA HALL; PAT HARPER;
ROSIE M. JONES; ALYSA L.
KINNELL; THOMAS LAWRENCE,
JR.; QUEEN E. LEWIS; MARIE A.
MAXWELL; PATRICIA R.
MCCARRELL; SEAN MCDANIEL;
CHARLES W. MULANAX; LUGENA
NWAIWA; TERRELL T. PALMER;
LOVERL RAMSEY; YOLANDA
RAMSEY; TRACY RICHARD;
TILEQUA L. SAVAGE; MIRIAM
SERWANGA; PATRICIA L.
STALEY; MICHELLE L. TYMA,
TERI VAUGHT; TERESA VEALES;
ERNEST WALSTON; JERILD A.
WALSTON; KARLA WALSTON;
SANDRA WILKINS; LAKEESA
GIBBONS; RHONDA D. WHEELER;
KELLY J. KAULAY; TRACY

No. 99-5132

EMERSON; DARREN J. HANNAH,
CHRISTI G. KING-WILLIAMS;
PAMELA J. BERRY; MICHAEL W.
GRAHAM; KIMBERLY JONES,

      Plaintiffs - Appellees,

v.

VOLUNTEERS OF AMERICA, INC.

      Defendant - Appellant.

STATE OF OKLAHOMA,
DEPARTMENT OF HUMAN
SERVICES,

      Amicus Curiae.

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 96-CV-1166-K)**

JoAnne Deaton (Michael F. Smith of Rhodes, Hieronymus, Jones, Tucker & Gable, P.L.L.C., Tulsa, Oklahoma; Richard Gann of Riggs Abney Neal Turpen Orbison & Lewis, Tulsa, Oklahoma with her on the brief), for Defendant-Appellant.

Steven R. Hickman of Frasier, Frasier & Hickman, Tulsa, Oklahoma, for Plaintiffs-Appellees.

Mark Lawton Jones, Assistant Attorney General, State of Oklahoma, Department of Human Services, Oklahoma City, Oklahoma, filed a brief for Amicus Curiae.

Before **BALDOCK** , **McKAY** , and **ALARCÓN** ,[*] Circuit Judges.

_____

**ALARCÓN** , Circuit Judge.

_____

Volunteers of America Oklahoma, Inc. ("the VAO") appeals from the order denying its motion for summary judgment seeking dismissal of the claims brought against it by its employees who work as Habilitation Training Specialists and Habilitation Training Specialist Managers ("Habilitation employees") in residences in the VAO's supported living program. The Habilitation employees filed a claim against the VAO seeking payment for working overtime. The VAO contends that it is exempt from paying not less than one and one-half times the hourly rate for work performed in excess of 40 hours a week to the Habilitation employees in the supported living program, pursuant to the domestic services exemption to the Fair Labor Standards Act, 292 U.S.C. § 213(a)(15). The district court denied the VAO's motion for summary judgment. It concluded that the domestic services exemption does not apply to Habilitation workers assigned to the supported living program because their services are not performed in private homes. Following the denial of the VAO's motion for summary judgment, the parties stipulated to the amount of overtime wages, costs, and attorneys' fees to

_____

[*] The Honorable Arthur L. Alarcón, Senior United States Circuit Judge for the Ninth Circuit, sitting by designation.

-3-

which the Habilitation employees would be entitled if the exemption did not apply. Thereupon, the district court entered its final judgment. We have jurisdiction pursuant to 28 U.S.C § 1291. Because we conclude that the record shows that the Habilitation employees were not employed in private homes, we affirm the denial of the VAO's motion for summary judgment.

I

The Fair Labor Standards Act ("FLSA") requires employers to pay their employees not less than one and one-half times the hourly rate for all hours worked over forty in a workweek. See 29 U.S.C. § 207(a)(1). [1] The FLSA exempts employers from the maximum hour requirements for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are defined and delimited by regulations of the Secretary)."

---

[1] Section 207(a)(1) provides as follows:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

-4-

29 U.S.C. § 213(a)(15). The regulations define domestic service employment as "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed." 29 C.F.R. § 552.3.

We must decide whether the Habilitation employees in the supported living program perform services in or about the private home of a developmentally disabled person "by whom he or she is employed." The Habilitation employees contend that they are entitled to overtime pay because they are employees of the VAO and not the employees of the individuals who are unable to care for themselves. They argue that 29 C.F.R. § 552.3 limits the exemption to services performed in the private home of the individual who employs a Habilitation employee. The Secretary of Labor's regulations clearly provide, however, that domestic service employees "who are employed by an employer other than the family or household using their services" may also be exempt from the FLSA. 29 C.F.R. § 552.109(a). The Habilitation employees assert that "any reliance upon 29 C.F.R. § 552.109, an interpretation which does not have the effect of law, is misplaced."

We quite agree that we are not bound by an agency's interpretation of a statute that is unreasonable. In § 213(a)(15), Congress expressly left it to the Secretary of Labor to define and delimit the terms in the statute by regulation.

The Supreme Court has instructed that courts must defer to a federal agency's interpretation of a statute unless the regulation is "arbitrary, capricious, or manifestly contrary to the statute." Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843-44 (1984). The contention that the exception does not apply to domestic services employees who are not employed directly by an individual in need of care, or his or her family has been rejected by the courts that have been confronted with the same question. See Terwilliger v. Home of Hope, Inc., 21 F. Supp. 2d 1294, 1299 n.2 (N.D. Okla. 1998) (rejecting, as inconsistent with 29 C.F.R. § 552.109(a), the plaintiffs' argument that the private home exception did not apply because they were employed by the agency and not the individual clients); Madison v. Resources for Human Development, Inc., 39 F. Supp. 2d 542, 545 n.3 (E.D. Pa. 1999) (holding that pursuant to 29 C.F.R. § 552.109, "[a]lthough the plaintiffs are employed by RHD rather than the individuals they serve, that by itself does not exclude them from the exemption."). We are persuaded that the secretary's interpretation is not arbitrary, capricious, or manifestly contrary to § 213(a)(15). We hold that the fact that domestic service employees are not employed by the individual receiving care, does not alone exclude them from the exemption.

II

The VAO contends that the plaintiffs are not entitled to overtime payments

because the Habilitation employees perform domestic/companionship services in the private homes of its clients in the supported living program. [2] We review the denial of a motion for summary judgment de novo. See Bennett v. Coors Brewing Co., 189 F.3d 1221, 1227 (10th Cir. 1999). We must determine whether there was any genuine issue as to any material fact, and, if not, whether the district court correctly applied the law to the facts construed in the light most favorable to the party opposing summary judgment. See id.

We must construe the domestic services exemption narrowly, "in light of the FLSA's broad remedial aims." Ackerman v. Coca-Cola Enters., Inc., 179 F.3d 1260, 1264 (10th Cir. 1999). The VAO bears the burden of proving that its employees fit "plainly and unmistakenly within the [exemption's] terms." Id. (internal quotations and citations omitted). In construing the exemption narrowly we are required to give deference to the regulations promulgated by the Department of Labor. See id.

The VAO provides assisted living domestic services to developmentally disabled persons through two different programs. In the in-home program, the VAO's Habilitation employees perform services in the family home where the developmentally disabled person resides with his or her parents or other family

---

[2] The parties do not dispute the fact that the Habilitation employers in the supported living program perform domestic/companionship services.

-7-

member.  The family member in the in-home program makes all the household management decisions such as the purchase of groceries, the arrangement of furniture, and the payment of rent and utilities.  The VAO does not occupy rooms in the clients' family home for use as an office.  If the VAO's services are terminated, the client remains in the family home.

In the supported living program, the client does not reside with a family member.  The VAO typically selects a residence for the developmentally disabled person, and sets up shared living arrangements with other developmentally disabled persons.  Up to three clients reside in the residences in the VAO supported living program.  The VAO signs the lease, and typically pays the rent from the clients' trust accounts.  In the supported living program, only the clients of the VAO may live together.  The VAO usually selects the clients who will share the same residence, although the client has the right to request a change of roommate.  If one of the clients terminates the VAO's services and chooses a different service provider than his roommate, one of them must leave the residence.

The Habilitation employees manage the residences in the supported living program.  They buy the food, control access to it, and prepare the meals.  The VAO also controls access to the residences in the supported living program.  If the residence contains only one VAO client, and if the client or his guardian

terminate the VAO's services, the client may remain in the residence pursuant to the terms of the lease or rental agreement. In these residences, the Habilitation employees may occupy a room in the residence to serve as an office and to house desks and file cabinets. The Habilitation employees who provide services in the supported living program also exercise control over their clients' daily activities.

III

No circuit court has interpreted the meaning of the term "private home" as used in 29 C.F.R. § 552.3. Several district courts, however, have addressed this question. In Lott v. Rigby, 746 F. Supp. 1084 (N.D. Ga. 1990), the court ruled that the plaintiffs, who were employed as house parents at the Stephens County Independent Group Residence for the Mentally Retarded, were not employed in a private home. Id. at 1085, 1088. The court relied on a 1975 administrative opinion which stated that the exemption would not apply to employees providing care to institutionalized persons, even if the services were provided in a residential home setting. See id. at 1087 (citing Wage and Hour Opinion WH-368, 91 W.H.M. 1031 (Nov. 25, 1975)). The court also noted that a private home is a fixed abode of the individual or family and that it is a separate and distinct dwelling maintained by the individual or family. See id. (citing H.R. Rep. No. 913, 93rd Cong., 2nd Sess., reprinted in, 1974 U.S. Code Cong. & Admin. News 2811, 2845). The court concluded that the fact that the home was the clients' sole

residence was not enough to make it a private home.  See id.  The court also determined that although the clients participated in the upkeep of the house as part of their learning process, they certainly did not maintain the home.  See id.

The next court to reach this issue ruled that the exemption did not apply to plaintiffs who were Habilitation Training Specialists.  See Linn v. Developmental Servs. of Tulsa, Inc., 891 F. Supp. 574, 580 (N.D. Okla. 1995).  The court focused on the fact that the defendant acquired the residences and the furniture for the clients and maintained a set of keys to the residences.  See id. at 579.  The court noted that the clients who lived together were unrelated and were grouped together for purposes of training and treatment, and that the defendant retained substantial authority in determining the composition of the homes.  See id.  The district court also relied on the fact that the clients did not pay the rent to the landlords, but rather, the state paid the defendants who in turn paid the landlords. See id.  Like the court in Lott, the court in Linn found that although the clients participated in the upkeep of the home, the service provider was ultimately responsible for its maintenance.  See id.   The court concluded that the defendant was in the business of providing both companionship and lodging to its clients and that the residences were not private homes as contemplated by the legislative history because they were more like lodging houses that act as business enterprises.  See id.; see also H.R. Rep. No. 913, 93rd Cong., 2nd Sess. 1974

("[A] dwelling house used primarily as a boarding or lodging house for the purpose of supplying such services to the public, as a business enterprise, is not a private home.").

In Terwilliger v. Home of Hope, Inc., 21 F. Supp. 2d 1294 (N.D. Okla. 1998), a district court from the same district distinguished the facts set forth in Linn. The district court concluded in Terwilliger that, based on the facts in the record before it, the Habilitation training specialists provided domestic/companionship services in private homes. The district court found that the defendant did not acquire the residence or the furniture for the clients. See id. Instead, 22% of the homes were owned by the clients' parent or guardian and the rest were leased in the clients' names from third parties. See id. The defendants did not co-sign the lease and the clients selected and purchased their own furniture. See id. The court also found that, unlike Linn, the defendants only kept keys to the residences for emergencies or to use with the clients' express permission. See id. The court also relied on the fact that the clients, not the defendant, chose whether or not to have a housemate and who the housemate would be. See id. The court noted that ten of the twenty seven homes were occupied by a single client. See id.

Most recently, in Madison v. Resources for Human Development, Inc., 39 F. Supp. 2nd 542 (E.D. Pa. 1999), the district court ruled that the residence in

-11-

which the plaintiffs worked were not private homes. Id. at 548. In reaching its decision, the court considered the decisions in Lott, Linn, and Terwilliger, as well as a case from the Utah Supreme Court, Bowler v. Deseret Village Ass'n, Inc., 922 P.2d 8 (Utah 1996). See id. at 545-46. The court acknowledged that, in light of these decisions, it is clear that the inquiry into whether services are provided in a private home for purposes of the domestic services's exemption is "fact-specific and to be made on a case-by-case basis, and that no one factor is dispositive." Id. at 546.

After evaluating all of the facts, the court in Madison concluded that the defendant ran the residences "as part of an overall care program" and that the clients lived there "as clients of the program." Id. at 548. The court acknowledged the fact that the clients were given the opportunity to make choices for themselves, but found that ultimately the service provider was in charge of the residence. See id. In reaching its conclusion, the district court was persuaded by the fact that the service provider placed its clients in one of its existing locations, or limited and supervised the clients' choice of residence. See id. The district court pointed out that the     clients paid room and board fees to the defendant who rented the houses and paid the expenses. See id. The district court also noted that some of the residents did not have keys to the residences and were not allowed to come and go as they pleased. See id. The court also relied on the fact

that the maintenance of the homes and the clients' activities in them were regulated by state law and the service provider's rules. See id. Finally, the court found significant the fact that the clients did not live in the homes before they became clients of the service provider. See id.

The Ninth Circuit considered the application of the domestic/companionship services's exemption in McCune v. Oregon Senior Servs. Div., 894 F.2d 1107 (9th Cir. 1990). It did not, however, discuss the meaning of the words "private home." In McCune, the plaintiffs were full-time, live-in attendants for elderly and disabled persons unable to care for themselves. Id. at 1108. The Ninth Circuit affirmed the district court's holding that the live-in attendants came within the companionship exemption to the FLSA. The plaintiffs in McCune did not seek overtime pay. Id. at 1111. The Ninth Circuit noted that the plaintiffs "live with their clients at a near poverty level providing around-the-clock care." Id. at 1110. The Ninth Circuit rejected the argument of the full-time, live-in attendants that they should be entitled to the minimum wage provisions of the FLSA because "individuals providing services to the elderly and infirm have a much less attractive job than those domestic service workers providing service to other clients." Id. at 1109. The court noted that if full-time, live-in attendants received minimum wage, the elderly and infirm would "be forced to forego the option of receiving these services in their homes if the cost

-13-

of the services increases." Id. at 1110. This policy concern has no application in this matter. The Habilitation employees who provide services in the supported living program do not live with their clients or provide around-the-clock care.

We agree with the district court in Madison that a determination whether domestic/companionship services are provided in a private home is "fact-specific and to be made on a case-by-case basis, and that no factor is dispositive." 39 F.Supp. 2d at 546. After reviewing the evidence in the light most favorable to the VAO, we conclude that it has failed to meet its burden of demonstrating that Habilitation employees in the supported living program fit "plainly and unmistakenly" within the overtime exemption for domestic service in private homes because of our duty to construe narrowly § 218(a)(15). See Ackerman v. Coca-Cola Enters., Inc., 179 F.3d at 1264. The domestic/companionship services performed by the Habilitation employees in the in-home program fit squarely within the exemption. Just as the name of the program implies, the services are performed in the family home of the developmentally disabled client. A family member is present to give the client emotional support and to manage and maintain the home in his or her best interests. The VAO's clients in the supported living program are placed in a residence outside the family home and without the full-time, live-in care of a relative. Instead, they are housed in a residence with strangers who are also developmentally disabled. Their diets and

daily activities are controlled by a Habilitation employee – not a family member. While the lease to the residence may be co-signed by a client, the VAO has the right to appropriate a room to use as an office for the Habilitation workers. These residences, managed by VAO employees, do not fit plainly and unmistakenly into the ordinary connotation of the words "private home" as used in 29 C.F.R. § 552.3, notwithstanding the fact that the lease may bear the name of a developmentally disabled person. The district court did not err in denying the VAO's motion for summary judgment.

V

The VAO and the State of Oklahoma Department of Human Services urge us to consider the history and the state policy interest behind the living arrangements in its supported living program in evaluating whether these services are provided in private homes. As a result of a class action law suit, the District Court of the Northern District of Oklahoma entered an Order of Deinstitutionalization, shutting down a state-run institution for developmentally disabled individuals because it was found that the residents were neglected and abused. See Homeward Bound, Inc. v. Hissom Mem'l Ctr., No. 85-C-437-E, 1987 WL 27104 (N.D. Okla. 1987). While the judgment implementing the court's order was on appeal the parties settled and proposed a consent decree that was approved by the court. The consent decree stated:

> A person's place of residence is his/her home. The State shall advocate that he/she may not be arbitrarily removed from the home for reasons relating to his/her mental retardation, behavior or medical condition. . . . Adults shall live with people of their choice. Whenever possible, the building in which adults live shall either be purchased or rented by the persons residing in it.

Pursuant to the consent decree, organizations such as the VAO enter into a contract with the Oklahoma Department of Human Services where they agree to provide services to the clients in exchange for reimbursement for approved services on a fee-for-service hourly fixed rate. The service providers are required to "document reasonable efforts to ensure consumers served through this Contract are afforded freedom of choice in all aspects of service provision, for which the Agency is responsible, unless such choice jeopardizes the consumers independence and well-being."

The policy considerations articulated here are important and ensure that persons with developmental disabilities are treated with dignity and are given the opportunity to integrate into mainstream society and to exercise freedom of choice. The commendable policies reflected in the consent decree have no bearing on the question whether the Habilitation employees who perform services in a supported living program are entitled to overtime pay because they work in residences managed by service providers. Whether or not the VAO's employees receive overtime wages does not change the fact that these residences likely meet

the goals of the consent decree and provide persons with developmental disabilities a much more free and dignified existence than if they remained in a large, state-run institution.

The Department of Human Services contends that whether the VAO's employees receive overtime wages does make a difference as to the kind of care its clients may receive. The Department asserts that the absence of overtime wage obligations ensures that the state is able adequately to reimburse service providers such as the VAO for the care of its clients. The Department argues that if the exemption does not apply, the availability of these important services would be limited because the services would cost more to provide.

Our task is limited to determining whether the Secretary of Labor's limitation of the exemption to domestic/companionship services provided in the private home of a disabled person is arbitrary, capricious or manifestly contrary to the FLSA. We conclude that the Secretary of Labor's interpretation of the reach of the exemption is reasonable. We lack the authority to broaden the coverage of the exemption to residences that are maintained by a service provider. The fact that the requirement that overtime pay should be paid to domestic services providers in residences like those managed by the VAO may limit the availability of such services should be addressed to Congress. We decline to broaden the exemption to apply to residences that are not truly private homes.

VI

We AFFIRM the district court's decision because we hold that the services provided by the Habilitation employees in the supported living program are not provided in the private homes of the developmentally disabled.


AFFIRMED.