PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 6 2004**

**PATRICK FISHER**
**Clerk**

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

T. MARIA WELDING; MARK A.
COOPER; VICKI (MORROW)
ALLSBROOKS; KATHLEEN M.
SMITH; ANDREA J. WILLIAMS;
ROBIN LEWIS; ANNETTE CUBIT;
VALERIE R. TITSWORTH; HAZEL
ERVIN; LASHAWNDA JONES;
ERMA MORROW; SHEILA
POWELL; CORDELL RICKS;
ELNITA TAYLOR,

        Plaintiffs-Appellees,

v.

BIOS CORPORATION, a corporation,

        Defendant-Appellant.

No. 02-5068

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. No. 00-CV-771-EA)**

---

Submitted on the briefs:

J. Daniel Morgan and Kristin L. Oliver of Gable & Gotwals, Tulsa, Oklahoma,
for Defendant-Appellant.

Steven R. Hickman of Frasier, Frasier & Hickman, LLP, Tulsa, Oklahoma,
for Plaintiffs-Appellees.

Before **EBEL** , **HENRY** , and **MURPHY** , Circuit Judges.

**EBEL** , Circuit Judge.

An employer is not required to pay overtime to an employee who provides companionship services to the aged or infirm in a private home.  The plaintiff employees here provided services to developmentally disabled persons in a variety of living arrangements.  In determining whether these living arrangements qualified as private homes, the district court analyzed the various living arrangements as a group rather than one-by-one.  We conclude that this was error and, therefore, we reverse the district court's ruling that, as a matter of law, the defendant employer is not entitled to the so-called "companionship services" exemption to the overtime requirement of the     Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219.[1]

Bios Corporation is in the business of providing services to developmentally disabled individuals in Oklahoma pursuant to contracts with the State.  A number of Bios employees brought suit under the FLSA claiming they

---

[1]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

were entitled to be paid overtime, i.e., time and a-half, for the hours in excess of forty that they worked each week. Bios moved for summary judgment, arguing that the companionship services exemption excused it from paying overtime wages.[2] *See id.* § 213(a)(15). The district court analyzed the living arrangements of the employees' clients as a group and concluded that they did not qualify as private homes. Accordingly, the court held that Bios was not entitled to the companionship services exemption as a matter of law. The court therefore denied summary judgment for Bios and effectively granted summary judgment for the employees. In light of this holding, the parties stipulated to the amount of damages, costs, and fees, and the district court entered final judgment for the employees. Bios now appeals.

### The Statutory and Regulatory Scheme

The FLSA provides an exemption to its overtime pay requirements for "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves (as such terms are delimited by regulations of the Secretary)." *Id.*

---

[2] Bios also moved for partial summary judgment on the issues of the appropriate statute of limitations and of its liability for liquidated damages. The district court ruled in Bios' favor on both of those issues and the employees did not file a cross-appeal. Those rulings are now law of the case.

"Congress created the 'companionship services' exemption to enable guardians of the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them." *Lott v. Rigby*, 746 F. Supp. 1084, 1087 (N.D. Ga. 1990) (citing Wage and Hour Opinion WH-368, 91 W.H.M. 1031 (Nov. 25, 1975)).

The regulations define "domestic service employment" as "services of a household nature performed by an employee in or about a private home (permanent or temporary) of the person by whom he or she is employed."[3] 29 C.F.R. § 552.3.

> . . . The domestic service must be performed in or about the private home of the employer whether that home is a fixed place of abode or a temporary dwelling as in the case of an individual or family traveling on vacation. A separate and distinct dwelling maintained by an individual or a family in an apartment house, condominium or hotel may constitute a private home.
>
> Employees employed in dwelling places which are primarily rooming or boarding houses are not considered domestic service employees. The places where they work are not private homes but commercial or business establishments. . . .

*Id.* § 552.101(a), (b).

---

[3] We have held that the domestic service employee need not be employed directly by the person receiving the services or by that person's family for the exemption to apply. The exemption can apply even when the domestic service employee is actually employed by a service agency, like Bios. *See Johnston v. Volunteers of Am., Inc.*, 213 F.3d 559, 562 (10th Cir. 2000).

-4-

## Review Standards

We review the grant or denial of a motion for summary judgment de novo, applying the same legal standard as the district court. *Spradling v. City of Tulsa*, 198 F.3d 1219, 1221 (10th Cir. 2000). Under that standard, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When applying this standard, we "constru[e] all facts and reasonable inferences in a light most favorable to the nonmoving party." *Pub. Serv. Co. of Colo. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1513 (10th Cir. 1994).

"[S]ummary judgment should be granted where the evidence is such that it would require a directed verdict for the moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986) (quotation omitted). The inquiry for summary judgment and a directed verdict are essentially the same: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. "[T]he inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id*. at 252.

As the employer asserting that it is exempt from the FLSA's overtime requirements, Bios "has the burden of establishing the [companionship services] exemption affirmatively and clearly," *Schoenhals v. Cockrum*, 647 F.2d 1080, 1081 (10th Cir. 1981) (quotation omitted). "The [FLSA] constitutes humanitarian and remedial legislation. Exemptions must be narrowly construed and are limited to those establishments plainly and unmistakably within the terms and the spirit of the exemption invoked." *Id.*

Accordingly, Bios is not entitled to summary judgment unless it can establish that the undisputed facts (or plaintiffs' version of any disputed facts) plainly and unmistakably fit within the companionship services exemption. If there are genuine and material factual disputes such that Bios could meet its burden of proof only if the jury resolved the factual disputes in its favor, then the matter is not appropriate for summary judgment and it should proceed to trial. If, however, the summary judgment record, when construed most favorably to Bios, does not clearly and unmistakably establish the companionship services exemption, then summary judgment may be entered for the appropriate plaintiffs. *See Anderson*, 477 U.S. at 250-51.

## Analysis

Whether Bios is exempt from paying overtime to any of the plaintiffs here depends on whether any of the residences in which plaintiffs provided services to developmentally disabled individuals should be considered "private homes" as that term is used in the regulations. "[T]he definition of a 'private home' exists along a continuum." *Bowler v. Deseret Villager Ass'n, Inc.*, 922 P.2d 8, 13 (Utah 1996). At one end of the continuum is "[a] traditional family home in which a single family resides," which clearly constitutes a private home. *Id.* At the other end of the continuum is "an institution primarily engaged in the care of the sick, the aged, the mentally ill or a boarding house used for business or commercial purposes," which clearly do not constitute private homes. *Id.* (quotation omitted). In between lie a variety of living arrangements, many of which may constitute "private homes" for purposes of the companionship services exemption.

"[A] determination whether domestic/companionship services are provided in a private home is fact-specific and to be made on a case-by-case basis[;] . . . no [single] factor is dispositive." *Johnston v. Volunteers of Am., Inc.*, 213 F.3d 559, 565 (10th Cir. 2000) (quotation omitted). The object of this case-by-case evaluation is not the particular provider, such as Bios, or even the particular employee or group of employees, such as plaintiffs. Rather, because the question is whether the services are provided in a private home, the object of evaluation is

the living unit of the person receiving the services, i.e., the client. The client's living unit consists of the client's bedroom and the common areas to which the client has access. The court must evaluate each living unit separately to determine where on the continuum it lies.

The district court here found that, due to the differences in the living units of the plaintiffs' clients, analysis of the relevant factors on an individual basis was "unwieldy." Aplt's App., Vol. II, Tab 13 at 603. The court acknowledged that an individualized analysis would show that "some plaintiffs might be entitled to overtime for care of some clients, but some might not be entitled to overtime at all. Further, one plaintiff might be entitled to overtime for care of one client, while he or she might not be entitled to overtime for care of another client." *Id.* But the court preferred to evaluate the living units as a whole, rather than individually. In this, the district court erred. We, therefore, must reverse and remand the action for further proceedings.

In evaluating where each living unit lies on the continuum, we conclude that the key inquiries are who has ultimate management control of the living unit and whether the living unit is maintained primarily to facilitate the provision of assistive services. To answer these inquiries, a court must look at many factors. Although no single factor is dispositive, some may be more important than others. What some courts have referred to as factors are, in reality, just historical facts

that evidence the presence or absence of a factor. As a result, the so-called factors that courts have considered have grown like weeds. We have reviewed the published cases addressing the question of what is a private home to determine what factors are most pertinent to the key inquiry.

The first factor is whether the client lived in the living unit as his or her private home before beginning to receive the services. If so, this is a powerful indicator that the residence is a private home because the mere onset of services is not likely to change the nature of the living unit. *See, e.g., Madison v. Res. for Human Dev., Inc.*, 39 F. Supp. 2d 542, 548 (E.D. Pa. 1999) (*Madison I*) (describing as an "easy-to-spot private home" those where "the families lived in their homes prior to and independent of their receipt of companion services," and concluding homes were not private where, among other things, "[t]he clients did not live in the homes before they became RHD clients, and they would not live in them but for their association with RHD"), *vacated on other grounds by* 233 F.3d 175 (3d Cir. 2000).

The second factor is who owns the living unit. Ownership is significant because it evidences control. Accordingly, if the living unit is owned by the service provider, that is a significant indicator that it is not a private home. If it is owned by the client or the client's family, that is a significant indicator that it is a private home. If it is owned by a third party, that is a more ambiguous

indicator, and the court must look to see who leases the unit from the third party. If the client or the client's family leases the unit directly from the owner, that is some indication that it is a private home, though not as powerful an indication as ownership. If the service provider leases the unit, that is some indication that it is not a private home. *Compare Terwilliger v. Home of Hope, Inc.*, 21 F. Supp. 2d 1294, 1299 (N.D. Okla. 1998) (relying on facts that clients owned or leased their residences from third persons and that service provider had no legal interest in residences in holding they were private homes), *with Madison v. Res. for Human Dev. Inc.*, 233 F.3d 175, 179 (3d Cir. 2000) (*Madison II*) (holding that residences were not private homes, and noting that clients selected residences from provider-approved list and provider then leased the residences and subleased them to clients), *and Linn v. Developmental Servs. of Tulsa, Inc*., 891 F. Supp. 574, 579 (N.D. Okla. 1995) (relying on fact that service provider acquired all the residences for its clients in holding residences were not private homes).

The third factor is who manages and maintains the residence. In other words, who provides the essential things that the client needs to live there, such as paying the mortgage or rent, paying for gas, electricity, and water, providing clean linens and clothes, and providing food? Again, this is relevant to who has control over the living unit. If many of the essentials of daily living are provided for by the client or the client's family, that weighs strongly in favor of it being a

private home. If they are provided for by the service provider, that weighs strongly in favor of it not being a private home. If both the client and/or the client's family and the service provider provide these essentials, then the factor is more ambiguous. *Cf. Johnston*, 213 F.3d at 563, 565 (relying on fact that service provider's employees managed the residences in holding residences not private homes).

The fourth factor is whether the client would be allowed to live in the unit if the client were not contracting with the provider for services. This, too, is relevant to the issue of control. If the client would be allowed to live in the unit without contracting for the services, that weighs in favor of it being a private home. If the client would not be allowed to live in the unit without contracting for the provider's services, that weighs in favor of it not being a private home. *See, e.g., Madison II*, 233 F.3d at 183 (relying on fact that clients could not remain in residence if they terminated their relationship with service provider in holding residences were not private homes); *Johnston*, 213 F.3d at 563 (noting that only clients of service provider could live together and that if one house mate terminated provider's services, either that house mate or the other(s) would have to leave).

The fifth factor is the relative difference in the cost/value of the services provided and the total cost of maintaining the living unit (including government

subsidies). This is directly related to the purpose for which the living unit is primarily maintained. If the cost/value of the services is incidental to the other living expenses, that weighs in favor of it being a private home. If the cost/value of the services is a substantial portion of the total cost of maintaining the living unit, that weighs in favor of it not being a private home.

Finally, the sixth factor is whether the service provider uses any part of the residence for the provider's own business purposes. Again, this is relevant to the issue of control. If the service provider does not use any part of the residence for its own purposes, that weighs in favor of it being a private home. If the service provider uses some part of the residence for its own business purposes, that weighs in favor of it not being a private home. *See, e.g., Johnston*, 213 F.3d at 565 (relying on fact that service provider had right to take room in residence to use as office for employees in holding residences were not private homes). The service provider's use of an area to maintain items that are specifically for the client's care and that are of a nature that one would expect to maintain at a private home, however, does not weigh against it being a private home.

To be entitled to the companionship services exemption, Bios must establish that the foregoing factors and any other factors that may be applicable, when considered together, clearly and unmistakably establish that the particular living unit in question is a private home. If Bios cannot meet this burden, it

-12-

cannot prevail even at trial, let alone on summary judgment. To prevail on summary judgment, Bios must prove, clearly and unmistakably, that the living unit is a private home *and* that there are no facts in the record creating a material dispute on this issue. If no jury could find, based upon the summary judgment record, that Bios clearly and unmistakably established the companionship services exemption even when all disputed facts and inferences are construed in its favor, then the court may enter summary judgment for the relevant plaintiff(s). In determining whether Bios has met its burden, the district court should analyze each living unit separately.

The judgment of the district court is REVERSED and the matter is REMANDED for further proceedings consistent with this opinion.