**Venus RAWLS et al., Individually and on behalf of a others similarly situated,**

v.

**AUGUSTINE HOME HEALTH CARE, INC. et al.**

**No. CIV. WMN–05–2602.**

United States District Court, D. Maryland.

July 5, 2007.

Richard J. Burch, Bruckner Burch PLLC, Houston, TX, for Philip B. Zipin, The Zipin Law Firm LLC, Silver Spring, MD, for Plaintiffs.

Jonathan W. Greenbaum, Emily K. Hargrove, Nixon Peabody, Washington, DC, for Defendants.

## *MEMORANDUM*

NICKERSON, Senior District Judge.

Before the Court is Defendants' Motion to Decertify Fair Labor Standards Act Collective Action. Paper No. 53. Also before the Court is Plaintiffs' Motion for Partial Summary Judgment. Paper No. 52. The motions have been fully briefed and are now ripe for review. Upon review of the pleadings and the applicable case law, the Court has determined that no hearing is necessary, and that both motions will be denied.[1]

## I. *FACTS AND PROCEDURAL HISTORY*

Plaintiffs have filed a complaint on behalf of themselves and other similarly situated employees against Augustine Home Health Care, Inc. (Augustine) and its president, chief executive officer, and owner, David Mainguy. Augustine is a referral agency which employs Certified Nursing Assistants (CNAs) who deliver care primarily to aged or infirm individuals at their dwelling place. Augustine contends that the dwelling places of its individual clients varied, including private homes, apartments, apartment complexes, senior living facilities, and assisted living and nursing homes. Members of the Plaintiff class claim to have performed their services exclusively at what they refer to as "continuing care retirement facilities." Those facilities include Edenwald, Mercy Ridge, and Pickersgill, all located in Maryland, and The Forum at Park Lane, located in Texas. Plaintiffs allege that, during their employment, Augustine failed to record their overtime hours properly and failed to pay them at the overtime rate when they worked in excess of forty hours in a work week, resulting in violations of the Federal Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. §§ 201 *et seq.;* the Maryland Wage & Hour Law (MW & HL), Md.Code Ann., Lab. and Empl. §§ 3–301 *et seq.;* and the Maryland Wage Payment & Collection Law (MWP & CL), Md.Code Ann., Lab. and Empl. §§ 3–501 *et seq.*

On January 25, 2006, this Court granted, *inter alia,* Plaintiffs' motion for court facilitated identification and notification of similarly situated employees, pursuant to § 216(b) of the FLSA.[2] Section 216(b) establishes an "opt-in" scheme which requires potential plaintiffs in an FLSA action to affirmatively state their intention to become a party to the action. 29 U.S.C. § 216(b). In deciding to facilitate notice to potential class members, this Court found that Plaintiffs had made a preliminary showing that a group of similarly situated potential plaintiffs existed. Mem. & Order dated Jan. 25, 2006 at 5–8 (citing *Gjurovich v. Emmanuel's Marketplace, Inc.,* 282 F.Supp.2d 91, 95 (S.D.N.Y. 2003) (noting that a plaintiff's burden to demonstrate that potential plaintiffs are similarly situated to him or her is minimal when the determination is merely a preliminary one)).

In their instant motion, Defendants contend that facts revealed in discovery establish that Plaintiffs' disparate employment settings and job requirements render them sufficiently dissimilar, requiring decertification of the collective action. In their motion for partial summary judgment, Plaintiffs argue that the "companionship services" exception to the overtime provisions of the FLSA cannot apply to them, entitling them to judg-

---

1. Although Defendant's Motion to Decertify will be denied, for the reasons stated below, the Court concludes that the Plaintiffs will be subdivided into four classes according to the facilities at which they performed their services. *See Coan v. Nightingale Home Healthcare, Inc.,* No. 05–CV–0101–DFH–TAB, 2006 WL 1994772, at *2 (S.D.Ind. July 14, 2006). In accordance with that decision, Plaintiffs' motion for partial summary judgment will be denied and Plaintiffs may resubmit summary judgment motions specifically tailored to each subdivision of the Plaintiff class.

2. Section 216(b) provides, in part, that "an action ... may be maintained against any employer ... in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b).

ment as a matter of law as to Defendants' FLSA liability.

## II. DISCUSSION

As this Court noted in its preliminary certification memorandum, a two-step inquiry applies in the determination of whether the appropriate circumstances exist to allow an FLSA action to proceed as a collective action. First, upon a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b), the plaintiff may proceed with a collective action on a provisional basis. *See Mike v. Safeco Insurance Company*, 274 F.Supp.2d 216, 219 (D.Conn.2003). Second, following discovery, the court engages in a more stringent inquiry to determine whether the plaintiff class is "similarly situated" in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action. *Id.; Marroquin v. Canales*, 236 F.R.D. 257, 260 (D.Md.2006) (noting that the initial, pre-discovery inquiry regarding whether a plaintiff class is similarly situated is "less stringent than the ultimate determination whether the class is properly constituted"). In considering a motion to decertify alleging dissimilarity of the plaintiff class, courts have considered three factors: "(1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Thiessen v. Gen. Elec. Capital Corp.*, 996 F.Supp. 1071, 1081 (D.Kan.1998); *see also Sharer v. Tandberg, Inc.*, No. 06–CV–626, 2007 WL 676220, at *2 (E.D.Va. Feb. 27, 2007).

The first factor of the decertification analysis involves an assessment of whether Plaintiffs have provided evidence of a company-wide policy which may violate the FLSA, as well as an assessment of Plaintiffs' job duties, geographic location, supervision, and salary. *Thiessen*, 996 F.Supp. at 1081–82; *Marroquin*, 236 F.R.D. at 260 ("A group of potential plaintiffs are 'similarly situated' when they together were victims of a common policy or scheme or plan that violated the law."). Here, although Plaintiffs were employed in different geographic locations, they were all CNAs who performed similar services and were paid an hourly wage. Further, undisputed evidence shows that Augustine engaged in a uniform, company-wide policy of refusing to pay overtime wages to CNAs who worked in excess of forty hours per week. *See* Letter from Loretta McGowan, Area Manager, to "All Augustine Home Health Employees" (undated) (stating that "[d]ue to an exception for all domestic employees ..., if you work over 40 hours a week, you will be paid your regular pay rate"); Dep. of David Mainguy 12:10–16:8.

Augustine's primary argument regarding the dissimilarity of the plaintiff class focuses on the second factor, the various defenses available which appear to be individual to each plaintiff. The individualized defenses factor assesses whether potential defenses pertain to the plaintiff class or whether the potential defenses require proof of individualized facts at trial. *Thiessen*, 996 F.Supp. at 1085. Augustine contends that its principle defense at trial would be that Plaintiffs are exempt from the FLSA's overtime requirement under the "companionship services" exception. That exception exempts an employer from having to pay overtime wages to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves[.]" 29 U.S.C. § 213(a)(15).[3] Congress created the exception "to enable guardians of

---

3. The term "domestic services" is defined in administrative regulations to the FLSA as "services of a household nature performed by an employee in or about a *private home* (permanent or temporary) of the person by whom he or she is employed. The term includes employees such as cooks, waiters, butlers, valets, maids, housekeepers, governesses, nurses, janitors, laundresses, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use. It also includes babysitters employed on other than a casual basis. This listing is illustrative and not exhaustive." 29 C.F.R. § 552.3 (emphasis added); *see also* 29 C.F.R. § 552.109 (extending the companionship services exemption to those employed by an employer or agency other than the family); *Long Island Care at Home, Ltd. v. Coke*, —— U.S. ——, ——–——, 127 S.Ct. 2339, 2351–52, 168 L.Ed.2d 54 (2007) (upholding the validity of § 552.109).

the elderly and disabled to financially afford to have their wards cared for in their own private homes as opposed to institutionalizing them." *Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir.2004) (internal citations omitted).

For the companionship services exception to apply, the services rendered must be performed in a "private home." *See* 29 C.F.R. § 552.3.[4] Department of Labor regulations describe a "private home" as "a fixed place of abode or a temporary dwelling as in the case of an individual or family traveling on vacation. A separate and distinct dwelling maintained by an individual or a family in an apartment house, condominium or hotel may constitute a private home .... Employees employed in dwelling places which are primarily rooming or boarding houses are not considered domestic service employees." 29 C.F.R. § 552.101(a)-(b). Courts addressing the companionship services exception have held that determination of whether a particular employee performs services in a private home requires a case-by-case, fact-specific inquiry. *See, e.g., Welding*, 353 F.3d at 1218 (applying a six factor inquiry in determining whether companionship services are provided in a private home and noting that such a determination is to be made on an evaluation of the living unit of each person receiving services);[5] *Madison v. Res. for Human Dev., Inc.*, 233 F.3d 175, 183 (3d Cir.2000) (noting that "[w]hat is clear is that the determination of what constitutes a 'private home' in the context of the FLSA companionship exemption must be made on a case-by-case

basis, taking into account all aspects of the living arrangements."); *Terwilliger v. Home of Hope, Inc.*, 21 F.Supp.2d 1294, 1299 (N.D.Okla.1998) (setting out a four part fact-specific inquiry useful in determining whether a dwelling is a private home).[6]

Here, Augustine contends that evidence uncovered in discovery clearly demonstrates that substantial differences existed among the living units in which the Plaintiff CNAs performed their services. The units were located in at least four separate residence facilities in two states, and Augustine contends that several Plaintiffs served clients living in single family homes in addition to serving clients at larger residence facilities. *See* Dep. of Linda Webb–Roberts 6:8–7:22 (stating that while working as a CNA in Texas, she provided services to a client who lived in a private home with her spouse while other clients lived alone in nursing facilities). Augustine argues that each facility employs a separate set of classifications with respect to the individual living units offered to its residents. *See* Opp'n to Mot. for Partial Summ. J. 5–7 (noting that the Edenwald facility offers independent apartments, assisted living units and nursing units, while the Mercy Ridge facility only distinguishes between independent apartments and assisted living units). Augustine also contends that significant differences existed among the living units within the living facilities themselves. *See* Dep. of Rhonda Beckett 8:17–10:20 (describing two-bedroom unit at the Pickersgill facility in which she assisted a client living

---

**4.** Department of Labor regulations define the term "companionship services" to include "those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. They may also include the performance of general household work: *Provided, however,* That such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked." 29 C.F.R. § 552.6 (emphasis in original).

**5.** The six factors articulated in *Welding* include whether the client lived in the living unit as his or her private home before beginning to receive

the services, who owns the living unit, who manages and maintains the residence, whether the client would be allowed to live in the unit if the client were not contracting with the provider for services, the relative difference in the cost/value of the services provided and the total cost of maintaining the living unit, and whether the service provider uses any part of the residence for the provider's own business purposes. *Welding*, 353 F.3d at 1218–20.

**6.** The *Terwilliger* Court relied on the following factors: "(1) [the facility's] source of funding; (2) access to the facility by the general public; (3) whether it is organized for profit or is a nonprofit organization; and (4) the size of the organization." *Terwilliger*, 21 F.Supp.2d at 1299 (citing *Linn v. Developmental Servs. of Tulsa, Inc.*, 891 F.Supp. 574, 579 (N.D.Okla.1995)).

with his wife, with a one room unit on the nursing side of the facility).

The Court finds that the independent defense factor of the decertification analysis weighs in favor of dividing the Plaintiff class according to the individual residence facility at which the Plaintiffs performed their services. Plaintiffs acknowledge that analysis of whether a client's living space constitutes a private home can be accomplished on a facility-wide basis. *See* Opp'n to Mot. to Decertify 13 (noting that Plaintiffs "worked in a finite number of facilities where Augustine had contracts and provided services to residents" and that "there is no need for any 'individualized inquiry' ... except perhaps to the extent the Court considers the Facilities individually."). The individual units within a particular facility are each governed by materially similar residency agreements provided by the facility which define all rules and policies of the particular facility. A review of those rules and policies would likely be sufficient in making a determination as to whether the individual units constitute "private homes." The residency agreements differ from facility to facility, however, making a determination regarding the applicability of the companionship exception appropriate only on a facility-wide basis. *Compare* Mot. for Partial Summ. J., Ex. 3 (Edenwald Residence Agreement); *with* Mot. for Partial Summ. J., Ex. 4 (Mercy Ridge Residence Agreement); Opp'n to Mot. to Decertify, Ex. 6 (The Forum at Park Lane Residence Agreement).[7]

Finally, under the fairness and procedural considerations factor, the Court considers the primary objectives of allowance of a collective action under § 216(b), namely "(1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D.Pa.2000). The Court also must "determine whether it can coherently manage the class in a manner that will not prejudice any party." *Id.* Here, as a practical matter, the Court notes that each individual Plaintiff would be unlikely to pursue his or her claim because of the costs involved relative to the damages sought. Additionally, Plaintiffs share a common issue as to whether the facilities in which they worked constitute "private homes" for the purposes of the companionship exception. A facility-wide determination of the proper characterization of the clients' residences would allow the litigation to proceed efficiently.

Thus, at this stage of the present litigation, the Plaintiffs will be subdivided into four classes according to the facilities at which they performed their services: Edenwald, Mercy Ridge, Pickersgill, and the Forum at Park Lane. *See Coan v. Nightingale Home Healthcare, Inc.*, No. 05–CV–0101–DFH–TAB, 2006 WL 1994772, at *2 (S.D.Ind. July 14, 2006) (noting that the district court may order separate trials for sub-classes of plaintiffs participating in opt-in litigation under the FLSA); *accord Realite v. Ark Restaurants Corp.*, 7 F.Supp.2d 303, 308 (S.D.N.Y. 1998). Accordingly, Plaintiffs' instant motion for partial summary judgment will be denied and, should they choose to do so, Plaintiffs may resubmit summary judgment motions specifically tailored to each subdivision of the Plaintiff class.

### III. CONCLUSION

For these reasons, the pending motions will be denied. A separate order consistent with the reasoning of this Memorandum will follow.

---

7. The Court notes that, despite Plaintiffs' contention that a determination as to whether the facilities in question constitute private homes is appropriate at this stage of the litigation, no residency agreement for Pickersgill facility has been produced.